IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NAVID MAJEDI, Individually and on behalf of a class, | ) ) ) ) | |
| Plaintiff, | ) ) | Jury Demanded |
| vs. | ) ) | Case No. |
| RESURGENCE LEGAL GROUP, PC, RESURGENT CAPITAL SERVICES LP, and CACH, LLC, | ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT-CLASS ACTION

### INTRODUCTION

Plaintiff, Navid Majedi, brings this action to secure redress for unlawful collection practices engaged in by Defendants Resurgence Legal Group, PC, Resurgent Capital Services LP, and CACH, LLC. Plaintiff alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), individually and on behalf of a class.

### VENUE AND JURISDICTION

1. This Court has jurisdiction under 15 U.S.C. § 1692k (FDCPA), 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

2. Venue and personal jurisdiction in this District are proper because:

   a. Defendants' collection communications were received by Plaintiff within this District;

b. Defendants do or transact business within this District.

## PARTIES

3. Plaintiff Navid Majedi ("Plaintiff") is an individual and natural person who resides in the Northern District of Illinois.

4. Defendant Resurgence Legal Group, PC ("Resurgence"), is a company that is engaged as a "debt collector" as defined by and within the meaning of the FDCPA, § 1692a(6). Resurgence is engaged in the business of collecting debts in this State where it regularly collects or attempts to collect defaulted debts owed or due or asserted to be owed or due another, and whose principal purpose is the collection of defaulted consumer debts by the mailing of written communications to, and via telephone communications with, consumers which are alleged to owe such defaulted debts.

5. Resurgence collects debts on behalf of purchasers of defaulted consumer debts, such as CACH, LLC in this case, via litigation, via the mailing of collection letters, and via telephone communications made to alleged debtors, all made in connection with the collection of the alleged debts they attempt to collect.

6. Resurgence maintains a website, www.resurgencelegal.com, which states in part as follows:

**CREDITOR RECOVERY SERVICES**

**Resurgence Legal Group, PC is a leading regional law firm specializing in consumer debt collection. We deliver results through a comprehensive, scalable servicing platform to maximize recovery in a fair, ethical and cost effective manner. Our diligent staff, efficient processes and automated workflows allow for the most valuable and compliant collection solutions for our clients.**

7. Resurgence is a law firm that specializes in consumer debt collection.

8. CACH, LLC ("CACH") is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6) because its principal purpose is the collection of defaulted consumer debts, via use of the mails to send letters in connection with the collection of debts that it owns, as well as via interstate commerce by, for example, causing defaulted consumer debts that it seeks to collect to be reported to the Equifax, Experian, and/or TransUnion credit reporting agencies.

9. CACH maintains a website, www.cach-llc.com, which states in part as follows;

**CACH, LLC, purchases portfolios of both domestic (U.S.) and international consumer debt owned by credit grantors including banks and finance companies, and by other debt buyers. As the new owner of any debt previously owned by another creditor, CACH's name may appear on a customer's credit report or in a letter from a collection agency.**

**The management of purchased assets is outsourced to Resurgent Capital Services LP (Resurgent), a third-party specializing in the management of these types of consumer assets. Resurgent is a manager and servicer of domestic and international consumer debt portfolios for credit grantors and debt buyers, including CACH, and performs these services on their behalf. Resurgent, a licensed debt collector, may perform these activities directly, or in most cases, will outsource the recovery activities to other, independent, specialized, licensed collection agencies. If you are a customer, please direct your inquiries to the firm currently servicing your account.**

10. CACH buys defaulted consumer debts for pennies on the dollar and attempts to collect the same via placing said debts with law firms, such as Resurgence, which attempt to collect said debts via the mails and litigation.

11. CACH and/or its servicer, Resurgent Capital Services LP, hired Resurgence to collect the alleged debt.

12. Resurgent Capital Services LP ("Resurgent") is a licensed debt collector specializing in the management of consumer assets. Resurgent is a manager and servicer of domestic and international consumer debt portfolios for credit grantors and debt buyers, including CACH, and performs these services on their behalf.

13. Resurgent is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6) because it regularly collects defaulted consumer debts on behalf of CACH.

14. Resurgent is a licensed debt collector that at times collects defaulted consumer debts on behalf of CACH directly, or by outsourcing the recovery activities to other, independent, specialized, licensed collection agencies, such as Resurgence.

## FACTS

15. On October 20, 2011, a judgment was entered against Plaintiff, in favor of CACH, in the case titled *CACH, LLC v. Navid Majedi*, Case No. 2011-M1-127458, filed in the Circuit Court of Cook County, Illinois. ("State Action").

16. In the State Action complaint, CACH asserts that it purchased the alleged debt that was originated with METRIS and/or HSBC CARD SERVICES (III) INC., in connection with a personal credit card account or line of credit extended to and utilized by Plaintiff, after Plaintiff was asserted to have defaulted on said credit card account or line of credit.

17. The obligation upon which Plaintiff was alleged to have defaulted stemmed from purchases of goods and services intended and used for family, household, and personal non-business purposes ("alleged debt"). The obligation is thus a "debt" as that term is defined by § 1692a(5) of the FDCPA.

18. On or around September 25, 2018, Resurgence mailed a letter ("Letter") to Plaintiff on behalf of Resurgent and CACH in connection with the collection of the alleged debt. (Exhibit A, Letter).

19. The Letter conveyed information regarding the alleged debt, including an account number, the identity of the current and original creditors, and a current balance alleged as being due from Plaintiff.

20. The Letter is a communication as that term is defined at §1692a(2) of the FDCPA.

21. Plaintiff received the Letter on or around October 2, 2018.

22. The Letter reads that the "Current Creditor" is "CACH LLC", and that the "Original Creditor" is "METRIS COMPANIES INC". (Exhibit A, Letter).

23. The Letter states in part: "Please be advised that we have been engaged by CACH LLC to collect its account with you in the amount of $10,531.19." (Exhibit A, Letter).

24. Plaintiff thereafter contacted an attorney, Mario Kasalo, to help him identify the alleged debt, as he did not recognize it.

25. Though the "Original Creditor" is identified as "METRIS COMPANIES INC" on the Letter, the complaint filed in the State Action, which sought to collect the same alleged debt, states that "HSBC CARD SERVICES (III) INC." is the "Original Creditor". (Exhibit B, State Action Complaint, Affidavit of Claim, ¶3).

26. After researching the alleged debt, attorney Kasalo found that the alleged debt referenced in the Letter was not an "account" at all, but rather consisted of a judgment that was entered against Plaintiff in 2011, described *supra*.

27. The "account" referenced by Resurgence thus does not exist.

28. Resurgence's reference to an "account" with respect to the judgment debt confused the Plaintiff as to the origin of the alleged debt, and would be confusing to an unsophisticated consumer, as an account cannot be a judgment, and vice versa.

29. Specifically, with the entry of the judgment, the "account" merged into the judgment and ceased to exist. The only rights Palisades had were governed by the judgment. *BAC Home Loans Servicing, LP v. Popa*, 2015 IL App (1st) 142053, ¶ 36, 30 N.E.3d 611 (rate of interest applicable after a judgment is the statutory judgment rate, not the contract rate, because contract "merges into the judgment and eliminates the contract, and therefore the judgment is controlled by statute, not the contract.").

30. Resurgence claims that it had been engaged by Palisades to collect its "account" in the amount of $10,531.19.

31. Such a claim is untrue, because an "account" no longer existed, as the alleged debt was reduced to judgment, and the amount of the alleged debt was not $10,531.19 when Plaintiff received the Letter, as it had increased and continues to increase daily since the date upon which judgment was entered, and thus the amount owed had increased since the Letter was mailed.

32. An "account" is a "detailed statement of the mutual demands in the nature of debit and credit between parties, arising out of contracts or some fiduciary relation." (Blacks Law Dictionary, 5th ed., "account"). It does not include a "judgment." *In re Foy*, 469 B.R. 209, 214 (Bkcy., E.D. Pa. 2012) ("Because the Judgment was entered on July 14, 2010, the Accounts ceased to exist as of that date. Therefore, this Court finds that Chase's assignment of the Accounts after July 14, 2010, without

reference to the Judgment constitutes a legal nullity."); 810 ILCS 5/9-109(a)(3), (d)(9) (Article 9 of the Uniform Commercial Code applies to assignments of accounts, defined in 810 ILCS 5/9-102(a)(2) to include credit card receivables, but not "an assignment of a right represented by a judgment").

33. The content of the Letter was deceptive, false and misleading, in that the "account" referenced therein did not exist, only a judgment did, and Resurgence thus mischaracterized the character and legal status of the alleged debt in violation of 15 U.S.C. §1692e(2).

34. Because of the reference to an "account" instead of a judgment, the Letter could induce an unsophisticated consumer to believe that the debt at issue, which is thousands of dollars more than the judgment amount entered over seven years earlier, was a separate debt unrelated to the judgment.

35. An unsophisticated consumer, when receiving a letter such as that received by Plaintiff, could be induced to pay the debt sought to avoid what he would think is the possibility of being sued, being hailed into court, and having to pay an attorney to defend a collection action, when in fact a judgment had already been entered, unbeknownst to the consumer.

36. An unsophisticated consumer could be induced, by the Letter, to pay or settle what he or she believed was a debt on an "account" debt to avoid the entry of judgment, without knowing that a judgment had already been entered.

37. In connection with attorney Mario Kasalo's efforts to determine the origin of the alleged "account" referenced in the Letter, attorney Kasalo obtained a copy of the State Action Complaint and searched the docket for the Circuit Court of Cook County,

Illinois, and identified that the "account" was in fact the judgment entered against Plaintiff on October 20, 2011 in Case # 2011 M1 127458—despite that the Letter and State Action Complaint contain conflicting information as to the identity of the original creditor.

38. In Illinois, the post-judgment interest rate is 9% per annum. See 735 ILCS 5/2-1303. *In re McNichols*, 249 B.R. 160, 178 (Bankr. N.D. Ill. 2000).

39. The judgment "account" of $10,531.19 is thus increasing daily due to the fact that interest is accruing at 9%.

40. The Letter failed to identify that the alleged debt consisted of a judgment, instead falsely stating it was an "account".

41. The Letter failed to state that the alleged debt would increase over time.

42. The Letter failed to state that the holder of the debt will accept payment of the amount set forth in full satisfaction of the debt if payment is made by a specified date, and/or that the amount due on the day he or she pays may be greater than the amount stated, as interest increases the amount of the alleged debt daily.

43. Defendants' failure to inform Plaintiff that interest increases the amount of the alleged debt, and/or that the balance increases every day, is misleading and deceptive. See *Avila v. Riexinger & Assocs., Ltd. Liab. Co.*, 817 F.3d 72, 77 (2d Cir. 2016); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000).

44. The amount of the debt stated in the Letter was false when Plaintiff received the Letter, as the amount had increased since the Letter was mailed, and an unsophisticated consumer would not know this fact, and could potentially rely on the

amount being accurate and decide to make payment on the amount sought, only to later realize (to his or her detriment) that the amount had increased.

45. Resurgence failed, in its Notice of Debt contained in the Letter, to provide the amount of debt as required by 15 U.S.C. §1692g(a)(1).

46. Defendants' failure to inform Plaintiff that the "account" is in fact a debt that has been reduced to judgment, and Defendants' reference to the alleged debt as an "account", is false, misleading and deceptive. 15 U.S.C. §1692e, e(2), and e(10).

47. An unsophisticated consumer could decide to pay the amount stated on the Letter, thinking that the debt has been paid, only to find out later that he owes substantially more than he or she paid, because there was no deadline on the Letter by which payment of the amount sought would satisfy the "account", and because the consumer would not know that interest continues to be applied which increases the amount of the judgment debt daily, as the consumer would not know that the account was in fact a judgment.

48. In this case, Plaintiff would not know how much money he owed on the alleged debt when he received the Letter, since the "Current Balance" of $10,531.19 that presumably was the balance on the date upon which the letter was mailed, on September 25, 2018, would increase by the time Plaintiff received said Letter.

49. Plaintiff was confused upon receipt of the Letter, as he did not know that the Letter did not attempt to collect an "account", but rather attempted to collect a judgment that was increasing over time due to interest.

50. Upon information and belief, Resurgence was at all times authorized to act on behalf of Resurgent and CACH to attempt to collect the alleged debt from Plaintiff.

51. CACH is liable for the acts and omissions of Resurgent and Resurgence, committed in connection with efforts to collect the alleged debt from Plaintiff. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016).

52. Resurgent is liable for the acts and omissions of Resurgence, committed in connection with efforts to collect the alleged debt from Plaintiff. *Id.*

## COUNT I—CLASS COUNTS—ALL DEFENDANTS

53. Plaintiff realleges and incorporates by reference the paragraphs alleged above as if fully plead herein.

54. 15 U.S.C. § 1692e of the FDCPA provides in part as follows:

**§1692e. False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**(2) The false representation of—**
**(A) the character, amount, or legal status of any debt…**

**(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . ..**

55. Defendants violated 15 U.S.C. §§1692e, 1692e(2), and 1692e(10) by:

a. Misrepresenting the character and legal status of the debt by referencing the alleged debt as an "account", as the account referenced in the Letter ceased to exist in 2011.

b. Failing to inform Plaintiff that the amount due on the day he pays may be greater than the amount stated, as interest increases the amount of the alleged debt daily.

56. 15 U.S.C. § 1692g of the FDCPA provides in part as follows:

**§1692g. Validation of Debts**

**(a) Notice of debt; contents**

**Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing --**

**(1) the amount of the debt…**

57. Defendants violated 15 U.S.C. §1692g(a) by failing to comply with the "amount of the debt" provision in its Notice of Debt mailed to Plaintiff.

58. Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), this action is brought on behalf of a class.

59. Exhibit A is a form letter.

60. The Class consists of (a) all persons in Illinois, (b) to whom Resurgence mailed the same form collection letter that it mailed to Plaintiff (Exhibit A), (c) to collect a debt reduced to judgment in Illinois entered in favor of CACH, LLC, (d) where the letter seeks to collect a judgment, which it refers to as an "account", (e) where the letter does not inform the person that the amount due on the day he or she pays may be greater than the amount stated, and (f) where the letter was mailed on or after December 17, 2017 and on or before December 31, 2018.

61. Plaintiff may alter the parameters of the classes to conform to discovery.

62. On information and belief, based on the fact that debts are assigned to collection agencies in groups of debts of similar type and vintage and not individually, the classes are so numerous that joinder of all members is impracticable.

63. There are questions of law and fact common to the classes, which questions predominate over any questions affecting only individual class members. The predominant common questions include:

a. Whether Defendants have a practice of collecting debts reduced to judgment in Illinois that they attempt to collect as "accounts";

b. Whether Defendants have a practice of collecting debts reduced to judgment in Illinois where, in connection with the collection of the judgments, they fail to inform judgment debtors that their debts are increasing daily due to accrued interest.

64. Plaintiff's claims are typical of the claims of the class members. All are based on the same legal and factual theories.

65. Plaintiff will fairly and adequately represent the members of the classes.

66. Plaintiff has retained counsel experienced in the prosecution of consumer credit and debt collection claims and class actions.

67. The Class consists of more than 40 persons from whom Defendant(s) attempted to collect defaulted consumer debts, by mailing the type of Letter that was mailed to Plaintiff.

68. A class action is superior for the fair and efficient prosecution of this litigation. Class-wide liability is essential to cause Defendants to stop the improper conduct. Many class members may be unaware that they have been victims of illegal conduct. Congress contemplated class actions as a means of enforcing the FDCPA.

WHEREFORE, Plaintiff requests that the Court enter judgment in Plaintiff's favor and in favor of the Class, and against Defendants for:

a. Statutory damages;

b. Any actual damages incurred by Class members;

c. Attorney's fees, litigation expenses and costs of suit;

d. Such other or further relief as is appropriate.

By: */s/ Mario Kris Kasalo*
Mario Kris Kasalo

THE LAW OFFICE OF M. KRIS KASALO, LTD.
20 North Clark Street, Suite 3100
Chicago, IL 60602
(312) 726-6160 (TELE)
(312) 698-5054 (FAX)
Mario.kasalo@kasalolaw.com

## JURY DEMAND

Plaintiff, on behalf of a class, demands a trial by jury.

By: /s/ *Mario Kris Kasalo*
Mario Kris Kasalo

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

By: */s/ Mario Kris Kasalo*
Mario Kris Kasalo

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that each defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

By: /s/ *Mario Kris Kasalo*
Mario Kris Kasalo